UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JUAN PEREZ, ANA DORANTES, DANIELE　　　　　:
FLUMIANI, ADRIAN HERNANDEZ, JESUS　　　　　:
NAVA, FABIO REYES, and ANGEL TEPOLE,　　　　:
on behalf of themselves and all others　　　　　　　:
similarly situated,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Plaintiffs,　　　　:　　**COMPLAINT**
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　-against-　　　　　　　　　　　　:　　**COLLECTIVE AND**
　　　　　　　　　　　　　　　　　　　　　　　:　　**CLASS ACTION**
MEXICAN HOSPITALITY OPERATOR LLC d/b/a　:
COSME, COSME NY LLC d/b/a COSME,　　　　　:
ENRIQUE OLVERA, and DANIELA SOTO-INNES,　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　Defendants.　　　:
-----------------------------------------------------------------------X

　　　　　Plaintiffs Juan Perez, Ana Dorantes, Daniele Flumiani, Adrian Hernandez, Jesus Nava, Fabio Reyes, and Angel Tepole (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of defendants Mexican Hospitality Operator LLC d/b/a Cosme, Cosme NY LLC d/b/a Cosme (together with Mexican Hospitality Operator LLC, "Cosme"), Enrique Olvera, and Daniela Soto-Innes (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

　　　　　1.　　　Cosme paid Plaintiffs and the rest of its waitstaff at the "tipped" minimum wage without satisfying the strict tip credit requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), failed to pay them at least the minimum overtime wage rate at one and one-half times the statutory minimum wage rate for all hours worked over forty per workweek, imposed an unlawful tip pool requiring them to pay a share of their gratuities to non-tip eligible polishers, kitchen expediters, and Shift Leaders, and failed to furnish each of them with timely wage notices

and accurate weekly wage statements in violation of the NYLL's Wage Theft Prevention Act ("WTPA").

2.     Plaintiffs bring this action on behalf of themselves and all similarly situated servers, bussers, runners, sommeliers, bartenders, and barbacks (collectively, the "Waitstaff") pursuant to the FLSA, the NYLL, and the WTPA seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover unpaid minimum and overtime wages, misappropriated gratuities, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs.

**JURISDICTION**

3.     This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

**VENUE**

4.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred at Cosme, which is located in the Southern District of New York.

**THE PARTIES**

**Plaintiffs**

5.     Juan Perez ("Perez") resides in Queens County, New York.

6.     Defendants employed Perez as a food runner from on or about October 10, 2014 through November 17, 2018.

7.     Perez is an "employee" within the meaning of the FLSA and the NYLL.

8.     Ana Dorantes ("Dorantes") resides in the Bronx, New York.

9.     Defendants employed Dorantes as a busser and food runner from approximately November 2015 through October 2018.

10. Dorantes is an "employee" within the meaning of the FLSA and the NYLL.

11. Daniele Flumiani ("Flumiani") resides in Miami-Dade County, Florida.

12. Defendants employed Flumiani as a sommelier from April 8, 2015 through February 28, 2019.

13. Flumiani is an "employee" within the meaning of the FLSA and the NYLL.

14. Adrian Hernandez ("Hernandez") resides in the Bronx, New York.

15. Defendants employed Hernandez as a kitchen expeditor and a food runner from approximately October 15, 2014 through September 15, 2018.

16. Hernandez is an "employee" within the meaning of the FLSA and the NYLL.

17. Jesus Nava ("Nava") resides in Kings County, New York.

18. Defendants employed Nava as a food runner from approximately October 2014 through December 2017.

19. Nava is an "employee" within the meaning of the FLSA and the NYLL.

20. Fabio Reyes ("Reyes") resides in the Bronx, New York.

21. Defendants employed Reyes as a busser and food runner from approximately July 2015 through October 2018.

22. Reyes is an "employee" within the meaning of the FLSA and the NYLL.

23. Angel Tepole ("Tepole") resides in New York, New York.

24. Defendants have employed Tepole as a polisher, a busser, and a runner from approximately June 2017 through the present.

25. Tepole is an "employee" within the meaning of the FLSA and the NYLL.

**Defendants Mexican Hospitality Operator LLC and Cosme NY LLC**

26.     Defendants Mexican Hospitality Operator LLC and Cosme NY LLC are New York limited liability companies that own, operate, and do business as Cosme, a Mexican restaurant located at 35 East 21st Street, New York, New York 10010.

27.     Cosme opened to the public in October 2014 doing business under the business entity name Defendant Mexican Hospitality Operator LLC.  Beginning in September 2018, Cosme began doing business under the business entity name of Defendant Cosme NY LLC.

28.     Cosme is a Modern Mexican restaurant located in the Flatiron District of Manhattan that has been included in The World's 50 Best Restaurants List since 2017, and it was recently named the Best Restaurant in the United States on the same 2019 List.  *See NYC's Cosme Wins Highest U.S. Ranking in 'World's 50 Best' List*, www.ny.eater.com/2019/6/25/18744209/cosme-nyc-world-50-best-restaurants-list (last visited August 8, 2019).

29.     Throughout the relevant period, Cosme had employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

30.     Within the three years prior to the filing of this Complaint, Cosme had an annual gross volume of sales in excess of $500,000.

**Defendant Enrique Olvera**

31.     Defendant Enrique Olvera is an owner of both Mexican Hospitality Operator LLC and Cosme NY LLC.

32.     Olvera is listed as a "Chef Partner" of Cosme on the restaurant's website.

33.     Olvera is listed as a "Principal" of Cosme on the New York State Liquor Authority's Public Query Results page for Cosme.

34.     Olvera opened Cosme and placed Soto-Innes in charge as the Chef de Cuisine.

35.     Until approximately 2016, Olvera pre-approved all items that Soto-Innes added to Cosme's menu.

36.     Olvera hires management at Cosme.  For example, Olvera requires managerial candidates to interview with him before they can begin to work at Cosme.

37.     Olvera exercises sufficient control over the operations of Cosme to be considered Plaintiffs' and the Waitstaff's employer under the FLSA and NYLL.

**Defendant Daniela Soto-Innes**

38.     Defendant Daniela Soto-Innes is an owner of both Mexican Hospitality Operator LLC and Cosme NY LLC.

39.     Soto-Innes is listed as a "Chef Partner" of Cosme on the restaurant's website.

40.     From the opening of the restaurant in October 2014 through approximately 2016, Soto-Innes was regularly present at Cosme every day it was open.  Beginning in approximately early 2017 through 2018, Soto-Innes was regularly present at Cosme two to three days per week.  Currently, Soto-Innes's presence at Cosme varies widely, but she is present less often than previous years.

41.     Soto-Innes won the Rising Star Chef of the Year award at the 2016 James Beard Awards and was named Thrillist's New York City Chef of the Year in 2017.  *See NYC's Chef of the Year is a 27-Year-Old Prodigy Upending New York Kitchen Culture*, https://www.thrillist.com/eat/new-york/chef-of-the-year-2017-cosme-atla-nyc-daniela-soto-innes (last visited August 8, 2019).

42.     Soto-Innes is currently the "World's Best Female Chef" according to the World's 50 Best List.  *See The World's Best Female Chef 2019,* https://www.theworlds50best.com/awards/best-female-chef (last visited August 8, 2019).

43.     Upon information and belief, Soto-Innes helped determine the wage rate and tip pool point allocations of the Waitstaff, including each Plaintiff's wage rate and tip pool point allocation.

44.     In May 2018, Soto-Innes and Cosme managers created the Shift Leader position and determined the wage rate and tip pool point allocation of the position.

45.     Soto-Innes disciplined Waitstaff at Cosme and sent both front-of-house and back-of-house staff home prior to the ending of their shift on multiple occasions.  For example, following an altercation between Reyes and a pastry chef, Soto-Innes told Reyes to stay home for a few days.  Soto-Innes also fired kitchen staff at Cosme.

46.     Soto-Innes exercises sufficient control over the operations of Cosme to be considered Plaintiffs' and the Waitstaff's employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

47.     Cosme is open seven days per week.  The restaurant is open for lunch Monday to Friday from 12:00 p.m. to 2:30 p.m., for brunch Saturday and Sunday from 11:30 a.m. to 2:30 p.m., and for dinner Monday to Friday from 5:30 p.m. to 11:00 p.m. and Saturday and Sunday from 5:30 p.m. to 11:30 p.m.

**Juan Perez's Hours Worked**

48.     From approximately October 2014 through 2016, Perez regularly worked at Cosme Tuesday through Saturday from approximately 3:30 p.m. to between 11:30 p.m. and 12:00 a.m., totaling approximately 40 to 42.5 hours per workweek.

49.     From approximately 2017 through approximately mid-2018, Perez regularly worked double shifts at Cosme on Monday, Wednesday, and Thursday from approximately 11:00 a.m. to between 11:30 p.m. and 12:00 a.m., Saturday from approximately 5:00 p.m. to between 11:30 p.m. and 12:00 a.m., and Sunday from approximately 12:00 p.m. to 3:30 p.m., totaling approximately 44.5 to 46.5 hours per workweek.

50.     From approximately mid-2018 through November 17, 2018, Perez regularly worked Friday and Saturday from approximately 5:00 p.m. to 11:30 p.m., and Sunday from approximately 11:00 a.m. to between 10:00 p.m. and 10:30 p.m., totaling approximately 23 to 23.5 hours per workweek.

**Ana Dorantes's Hours Worked**

51.     From approximately November 2015 through December 2016, Dorantes regularly worked dinner shifts as a busser at Cosme on Monday, Thursday, Friday, and Sunday from approximately 4:30 p.m. to between 11:30 p.m. and 12:00 a.m.  During this period, Dorantes also worked a double shift on Saturday, from between 10:00 a.m. and 10:30 a.m. to between 11:30 p.m. and 12:00 a.m., totaling 41 to 44 hours per workweek. During this period, Dorantes also occasionally worked a double shift consisting of both the brunch and dinner shifts on Sunday.

52.     From approximately January 2017 through May 2017, Dorantes regularly worked the same schedule as above, but she worked two or three varying dinner shifts per week as a food runner.

53.     From approximately June 2017 through July 2018, Dorantes regularly worked the same schedule as above as a food runner.

54.     From approximately August 2018 through October 2018, Dorantes regularly worked as a food runner during the lunch shift on Monday and Thursday from

approximately 10:30 a.m. to 3:00 p.m., the dinner shift on Friday from approximately 4:30 p.m. to between 11:30 p.m. and 12:00 a.m., and a double shift on Saturday and Sunday from approximately 10:00 a.m. to between 11:30 p.m. and 12:00 a.m., totaling approximately 43 to 44.5 hours per workweek.

**Daniele Flumiani's Hours Worked**

55.     Throughout his employment for Defendants, Flumiani regularly worked as a sommelier at Cosme Monday through Friday from between 4:00 p.m. and 4:30 p.m. to between 11:30 p.m. and 12:00 a.m., totaling approximately 35 to 40 hours per workweek.

**Adrian Hernandez's Hours Worked**

56.     From approximately October 2014 through July 2018, Hernandez regularly worked as a kitchen expeditor Tuesday through Thursday starting between 3:30 p.m. and 4:00 p.m. to between 11:00 p.m. and 11:30 p.m. and Friday and Saturday starting between 3:30 p.m. and 4:00 p.m. to between 12:00 a.m. and 1:00 a.m., totaling 37 to 43 hours per workweek.

57.     From approximately August 2018 through September 15, 2018, Hernandez regularly worked the same schedule, but he worked two to three varying weekly shifts as a food runner instead of his kitchen expeditor shifts.

58.     On occasion throughout his employment, Hernandez also worked double shifts, consisting of a lunch shift from approximately 10:00 a.m. to 4:00 p.m. before his regularly scheduled dinner shift.

**Jesus Nava's Hours Worked**

59.     From approximately October 2014 through September 2016, Nava regularly worked as a food runner Tuesday through Saturday from approximately between 3:30 p.m. and 4:00 p.m. to between 11:30 p.m. and 12:00 a.m., totaling 37.5 to 42.5 hours per workweek.

60.     From approximately October 2016 through December 2017, Nava occasionally worked a brunch shift on Sunday, from 10:00 a.m. to 4:00 p.m., before his regularly scheduled dinner shifts.

**Fabio Reyes's Hours Worked**

61.     From approximately July 2015 through December 2015, Reyes regularly worked as a busser for five varying days per workweek, generally consisting of two to three weeknight dinner shifts from approximately 4:30 p.m. to 11:30 p.m., and weekend double shifts on Saturday and Sunday, from approximately 10:00 a.m. to between 10:00 p.m. and 10:30 p.m., totaling 38 to 46 hours per workweek.

62.     From approximately January 2016 through May 2018, Reyes regularly worked as a food runner for five dinner shifts on varying days each workweek, from approximately 4:30 p.m. to between 11:30 p.m. and 12:00 a.m., totaling 35 to 37.5 hours per workweek.

63.     From approximately June 2018 through October 2018, Reyes regularly worked as a food runner during the dinner shift on Monday from approximately 4:30 p.m. to 11:30 p.m. and on Saturday from approximately 4:30 p.m. to 12:00 a.m., as well as a double shift on Sunday, from approximately 10:00 a.m. to between 10:00 p.m. and 10:30 p.m., totaling 26.5 to 27 hours per workweek.

**Angel Tepole's Hours Worked**

64.     From approximately June 2017 through November 2017, Tepole regularly worked a double shift as a polisher on Saturday and Sunday from approximately 10:30 a.m. to between 10:30 p.m. and 11:30 p.m., with the shift end time depending on the number of covers at Cosme during the dinner shift.  Tepole regularly had a break from approximately 4:00 p.m. to 4:30 p.m. whenever he worked the double shift.

65.     From approximately December 2017 through September 2018, Tepole regularly worked the same schedule above as a back polisher, but also worked the Friday dinner shift from approximately 4:30 p.m. to 12:00 a.m.

66.     From approximately October 2018 through April 2019, Tepole regularly worked the same schedule as above as a busser.

67.     From approximately May 2019 through the present, Tepole has regularly worked the same schedule as above as a food runner, with the addition of a dinner shift on Thursday night from approximately 4:00 p.m. to between 10:30 p.m. and 11:30 p.m., as well as an additional varying weeknight dinner shift per week.

**Plaintiffs' Wages**

68.     Throughout Plaintiffs' employment at Cosme, Defendants paid Plaintiffs and the Waitstaff at the reduced tipped employee minimum hourly wage rate.

69.     From in or about October 2014 through on or about December 31, 2015, Defendants paid the Waitstaff $5.65 per hour.

70.     From on or about January 1, 2016 through on or about December 31, 2017, Defendants paid the Waitstaff $7.50 per hour.

71.     From on or about January 1, 2018 through on or about December 31, 2018, Defendants paid the Waitstaff $8.65 per hour.

72.     Since on or about January 1, 2019, Defendants have paid the Waitstaff $10.00 per hour.

**Defendants' Unlawful Misappropriation of Plaintiffs' and the Waitstaff's Tips**

73.     Throughout each Plaintiff's employment, Defendants required Waitstaff at Cosme to share their tips under a pooling arrangement that included three non-tip-eligible polishers and one non-tip-eligible kitchen expeditor per shift.

74.     From approximately October 2014 through January 2019, the polisher position at Cosme was performed by rotating bussers who were designated as polishers for the entirety of a given shift.  Polishers do not interact with customers on the dining room floor, instead working either in a separate room (as glass polishers) or at the halfway point on the stairs between the kitchen in the basement and the dining room floor (as back polishers).  Both of the polisher work stations are out of the view of customers.

75.     Glass polishers' work duties include polishing and shining water glasses, glasses for the bar, and coffee cups, as well as re-stocking the same for the barbacks and bussers to pick up for restocking the bar and setting up tables.  The polishers do not interact with customers and do not engage in direct customer service.

76.     Back polishers' work duties include clearing off any remaining food from customers' plates and washing the plates prior to physically bringing them downstairs to the dishwashers, shining and polishing silverware after it is cleaned by the dishwashers, cleaning, restocking, and taking out the garbage from the bathrooms, and sweeping and mopping the floor and the stairs.

77.     Since approximately February 2019, Cosme has used food runners as polishers.  Cosme currently rotates the food runners who work as polishers approximately every two hours throughout each workday.  This new policy violates the so-called "80-20" rule of the New York Hospitality Industry Wage Order, which provides:

> On any day that a service employee or food service worker works at
> a non-tipped occupation
>
> (a) for two hours or more, or

(b) for more than 20 percent of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day.

12 N.Y.C.R.R. § 146–2.9.

78.     From approximately October 2014 through mid-2018, Hernandez regularly worked as the kitchen expeditor at Cosme.  During this period, on days that Hernandez was not working, and approximately from mid-2018 through April 2019, the kitchen expeditor position consisted of a rotating food runner who was designated as the kitchen expeditor for the entirety of a given shift.

79.     Since approximately May 2019, a line cook has worked as the kitchen expeditor.

80.     At all times since Cosme's opening, Cosme's kitchen expeditor has remained downstairs in Cosme's kitchen for the entirety of a given shift.  The expeditor is responsible for setting up the chef's pass, a long, flat surface where dishes are plated and picked up by Waitstaff.  The expeditor also sets up the salsa, makes sure the walk-in refrigerators are organized, cuts limes, sets up cilantro, salt, and olive oil, and puts the finishing touches on customer orders.  The expeditor also organizes the order tickets and directs the food runners where to bring the food.  The expeditor does not leave the kitchen, does not interact with customers, and does not provide direct customer service.

81.     For shifts during which bussers worked as polishers, they continued to receive a busser's share from the Cosme tip pool of 0.5 points.

82.     From October 2014 through approximately January 2019, for shifts during which food runners worked as expeditors, they continued to receive a food runner's share from the Cosme tip pool of 0.7 points.

83.     When a manager left Cosme in approximately May 2018, the Cosme General Manager at the time, Hernan Martinez, and Soto-Innes called a staff meeting for

all front-of-house Cosme employees.  During the meeting, Martinez told the staff that Cosme recently created a position called the Shift Leader and that "according to New York State law, because it is employer-mandated, we are the ones who set up the tip pool, we can determine how the tip pool is spread out," while Soto-Innes told the staff that in "a lot of fine dining restaurants, if we want to take a whole point from somebody that is disrespectful or messes up, the restaurant owners can totally do that and it is not illegal." Soto-Innes also noted that "if a server messes up or a busser messes up it is totally legal to take a point or half a point off their tips because it is the owners' decision," "servers made a fuckload of money," and "we need to set systems that actually work now for everyone and for accounting and for the owners to make money."

84.     During and after the May 2018 staff meeting, various Waitstaff voiced their objections and concerns that the new Shift Leader would be receiving tips while primarily performing the job duties of a Cosme manager.  During the meeting, Flumiani questioned the Shift Leader position, adding that the reason Cosme felt they needed Shift Leaders for more help on the floor was because "there is no floor manager" and that it "looks like you want to use that as the floor manager, but there is no real floor manager."

85.     Over the Waitstaff's objections, a server, Moises Cuatle, was promoted to the "Shift Leader" or "Captain" position.  Beginning in approximately May 2018, Cosme has paid the Shift Leader at the New York statutory minimum wage rate of $13.00 per hour in 2018 and $15.00 per hour in 2019, rather than the tipped minimum wage it pays to the Waitstaff.  Throughout this time, the Shift Leader received a higher tip point value in the Cosme tip pool (1.2 points) than any Waitstaff position.

86.     Cosme Shift Leaders' responsibilities are equivalent to a manager's responsibilities, as Shift Leaders create the Cosme floor map and table assignments for servers, do not have set sections of their own, and wear a suit as opposed to the uniform

the rest of the Waitstaff wears.  When the General Manager leaves around 9:30 p.m. each night, the Shift Leader on duty performs the closing procedures at Cosme, is the face of management for any customer complaints, and collects all the tip money from servers for dividing and distribution.  Shift Leaders act as the overseer of the Waitstaff's shifts and are entitled to a manager's meal in addition to the family meal.

87.     Shift Leaders also regularly direct certain members of the Waitstaff to leave their shifts early towards the end of the dinner shift when service slows down, and only managers and Shift Leaders have the authority to comp food and drink items for customers.

88.     Following the May 2018 staff meeting, Defendants distributed a document titled "Tip Structure Notice" which noted that the Shift Leader would in fact be receiving $13.00 per hour (as opposed to $8.65 like the rest of the Waitstaff) and a tip point value of 1.2 points, higher than any Waitstaff position.  During and after the staff meeting, various Waitstaff complained concerning the creation of the Shift Leader position and their tip pool participation.  In response, Soto-Innes's attitude towards the Waitstaff then became hostile.  Soto-Innes began to regularly pressure and yell at Waitstaff members, including Perez, Dorantes, Hernandez, and Reyes, constantly directing them to sweep and mop the floor and food runners to, after service concluded, thoroughly scrub plates with Clorox and Ajax using a sponge to get rid of the stains left on the plates from mole.  In a similar vein, in August 2018, Soto-Innes called Hernandez a "fat boy" and required that he rotate out of the kitchen as an expeditor and work as a food runner two or three shifts per workweek, adding that Hernandez "could use the exercise."

## CLASS ACTION ALLEGATIONS

89.     The claims in this Complaint arising out of the NYLL are brought by Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure (Rule 23), on behalf of

themselves and of a class consisting of Waitstaff members who have worked at Cosme in the past six years (the "Rule 23 Class").

90.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

91.     The size of the Rule 23 Class is at least fifty current and/or former employees, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.  The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

92.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.  All the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all wages due, misappropriating gratuities, and failing to provide Rule 23 Class members with all required wage notices and wage statements.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

93.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

a. whether Defendants employed Plaintiffs and the Rule 23 Class within the meaning of the New York Labor Law;

b. whether Defendants paid Plaintiffs and the Rule 23 Class at the appropriate minimum wage rate for all weekly hours worked up to forty;

c. whether Defendants paid Plaintiffs and the Rule 23 Class at the appropriate overtime rate for all weekly overtime hours worked;

d. whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 146, as alleged herein;

e. whether Defendants redistributed portions of the tips earned by the Rule 23 Class to managers and employees working in non-tip eligible positions who were not entitled to receive tips under the FLSA and the NYLL;

f. whether Defendants failed to provide the Rule 23 Class members at the time of hiring or whenever there was a change in their rates of pay with a timely notice stating, *inter alia*, their rates of pay and the basis thereof, whether paid by the hour or otherwise, and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, in violation of NYLL § 195(1);

g. whether Defendants failed to provide accurate wage statements at the end of every pay period to all Rule 23 Class members, in violation of NYLL § 195(3); and

h. the nature and extent of class-wide injury and the measure of damages for those injuries.

94. With respect to common questions of law, the NYLL provides:

No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity for an employee . . . . Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or *similar employee*.

NYLL § 196–d (emphasis added).

95. In *Barenboim v. Starbucks Corp.*, the New York Court of Appeals opined:

The [Hospitality Industry] Wage Order also codified the DOL's long-standing construction of section 196-d as limiting

> tip-pool eligibility to workers who "perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental."   It is therefore evident that employer-mandated tip splitting should be limited to employees who, like waiters and busboys, are ordinarily engaged in personal customer service, a rule that comports with the 'expectation[s] of the reasonable customer." (internal citations omitted).

21 N.Y.3d 460, 471–72 (2013); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("New York law similarly prohibits employers from requiring tipped employees to share tips with non-service employees or managers.").

96.     The New York Hospitality Industry Wage Order mandates that "employers may not require directly tipped employees to contribute a greater percentage of their tips to indirectly tipped employees through tip sharing or tip pooling than is customary and reasonable."  12 N.Y.C.R.R. § 146–2.14(f).

97.     Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.

98.     Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants as Waitstaff within the six years prior to the filing of this action.

99.     Plaintiffs and the members of the Rule 23 Class enjoy the same statutory rights under the NYLL to be paid at the correct minimum wage rates and to keep the gratuities they earn.

100.     Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

101.     Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

102.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

103.    Plaintiffs have retained counsel competent and experienced in wage-and-hour litigation and class action litigation.

104.    There is no conflict between any Plaintiff and the Rule 23 Class members.

105.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

106.    The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.

107.    Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

108.    Individual employees lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

109.    In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

110.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## COLLECTIVE ACTION ALLEGATIONS

111.    The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons who are current and/or former Waitstaff of Defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

112.    The FLSA Collective consists of at least fifty Waitstaff who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wages and unlawfully misappropriating portions of their tips.

113.    The FLSA Collective consists of persons who, during their employment with Defendants, worked as servers, bussers, food runners, sommeliers, bartenders, and barbacks (*i.e.*, the Waitstaff) and fell into the category of non-exempt, non-managerial tipped employees who customarily and regularly earned more than $30 per month in tips.

114.    As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL.  This policy and pattern or practice includes, *inter alia*, the following:

  a.  failing to notify the FLSA Collective that Defendants were taking a "tip credit" against their wages;

  b.  failing to pay the FLSA Collective at the full minimum wage rate for all hours worked;

  c.  failing to pay the FLSA Collective members who worked over forty hours per workweek at the full minimum overtime wage rate for those hours worked in excess of forty per workweek; and

  d.  allocating portions of the tips earned by the FLSA Collective to non-tip-eligible employees.

115.    With respect to the FLSA's requirements:

> The FLSA . . . allows an employer to pay "tipped employees" an hourly rate less than the federal minimum wage by crediting a portion of the actual amount of tips received by the employee against the required hourly minimum wage. An employer may not avail itself of the tip credit if it requires employees to share their tips with employees who do not regularly and customarily receive tips.  Therefore, "an employer loses its entitlement to the tip credit where it

> required tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." "When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as part of his employment."

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 131 (S.D.N.Y. 2014) (internal citations and quotations omitted).

116.   Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

117.   Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

118.   The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

119.   Those similarly situated employees are known to Cosme and are readily identifiable and locatable through Cosme's records.

120.   Those similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

121.   Plaintiffs and the FLSA Collective repeat and reallege all foregoing paragraphs as if fully set forth herein.

122.   Defendants are employers within the meaning of 29 U.S.C. § 201 *et seq.*

123.   Defendants were required to pay Plaintiffs and the FLSA Collective the applicable minimum wage rate for each hour that they worked.

124.   Defendants failed to pay Plaintiffs and the FLSA Collective the minimum wages to which they were entitled under the FLSA.

125.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

126.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM**
**(New York Labor Law – Unpaid Minimum Wage)**

127.     Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if fully set forth herein.

128.     Defendants are employers within the meaning of the NYLL §§ 190 *et seq.*, 651(5), and 652, and supporting New York State Department of Labor ("NYDOL") Regulations, including but not limited to 12 N.Y.C.R.R. Part 146.

129.     Defendants failed to pay Plaintiffs and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL.

130.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class minimum hourly wages.

131.     As a result of Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class have suffered damages by being denied minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs of this action.

### THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

132. Plaintiffs and the FLSA Collective repeat and reallege all foregoing paragraphs as if fully set forth herein.

133. Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times the full minimum wage rate for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

134. Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

135. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

136. Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

### FOURTH CLAIM
### (New York Labor Law – Unpaid Overtime)

137. Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if fully set forth herein.

138. Under the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times the full regular hourly wage rate for all hours worked in excess of forty per workweek.

139. Defendants have failed to pay Plaintiffs and the Rule 23 Class the full overtime wages to which they were entitled under the NYLL.

140.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages at the full minimum overtime wage rate.

141.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

**FIFTH CLAIM**
**(New York Labor Law – Misappropriation of Gratuities)**

142.    Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if fully set forth herein.

143.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the Rule 23 Class in violation of the NYLL, Article 6, § 196-d and the supporting NYDOL Regulations.

144.    Defendants required Plaintiffs and the Rule 23 Class to share a portion of the gratuities they received with employees working in positions other than a busser, food runner, bartender, sommelier, server, or similar employees, in violation of NYLL, Article 6, § 196-d and the supporting NYDOL Regulations, including but not limited to 12 N.Y.C.R.R. § 146–2.14.

145.    By Defendants' knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities received by Plaintiffs and the Rule 23 Class, Defendants have willfully violated the NYLL, Article 6, § 196-d and the supporting NYDOL Regulations.

146.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their misappropriated gratuities,

liquidated damages, reasonable attorneys' fees and costs, and pre- and post-judgment interest.

**SIXTH CLAIM**
**(New York Labor Law – Wage Theft Prevention Act, Failure to Provide Notices)**

147.    Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if fully set forth herein.

148.    The NYLL and WTPA, as well as the NYDOL's interpretive regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

149.    In violation of NYLL § 195(1), Defendants failed to furnish each Plaintiff and the Rule 23 Class members at the time of hiring and whenever there was a change to rates of pay with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

150.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants statutory damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**SEVENTH CLAIM**
**(NYLL Wage Theft Prevention Act, Failure to Provide Wage Statements)**

151.    Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if fully set forth herein.

152.    The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

153.    Throughout Plaintiffs' and the Rule 23 Class's employment with Defendants, Defendants paid Plaintiffs and the Rule 23 Class without providing a wage statement at the end of every pay period accurately listing, *inter* alia, allowances (*e.g.* tip credits), if any, claimed as part of the minimum wage, in violation of the NYLL § 195(3).

154.    Due to Defendants' violation of NYLL § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants statutory damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the Rule 23 Class, and the FLSA Collective respectfully request that this Court enter an order and judgment:

a.    certifying the case as a collective action for the violations of the FLSA alleged in the Complaint for the employees described herein and designating Plaintiffs' attorneys as counsel for the FLSA Collective;

b.    designating the named Plaintiffs as the representatives of the FLSA Collective;

c.    certifying the case as a class action pursuant to the NYLL and Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the

Complaint for the class of employees described herein, certifying Plaintiffs as class representatives, and designating Plaintiffs' attorneys as class counsel;

       d.    authorizing the issuance of notice at the earliest possible time to all Waitstaff employees employed by Defendants within the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

       e.    declaring that Defendants have violated the minimum wage provisions of the FLSA and the NYLL;

       f.    declaring that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

       g.    declaring that Defendants unlawfully retained portions of the Waitstaff's gratuities, in violation of the NYLL;

       h.    declaring that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

       i.    declaring that Defendants' violations of the FLSA and NYLL were willful;

       j.    enjoining future violations of the FLSA and NYLL by Defendants;

       k.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class damages for unpaid minimum and overtime wages;

       l.    disgorging and ordering that Defendants remit back the amount of the tips misappropriated from Plaintiffs, the Rule 23 Class, and the FLSA Collective;

       m.    awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and NYLL;

n.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish accurate wage statements pursuant to the NYLL;

o.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish wage notices pursuant to the NYLL;

p.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

q.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class pre- and post-judgment interest pursuant to the NYLL;

r.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

s.      awarding such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 8, 2019

PECHMAN LAW GROUP PLLC

By:
        Louis Pechman
        Gianfranco J. Cuadra
        Gregory S. Slotnick
        488 Madison Avenue - 17th Floor
        New York, New York 10022
        Tel: (212) 583-9500
        pechman@pechmanlaw.com
        cuadra@pechmanlaw.com
        slotnick@pechmanlaw.com
        *Attorneys for Plaintiffs, the Rule 23 Class, and the FLSA Collective*